IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KAREN GALLAGHER, | § | |
| *Plaintiff,* | § § § | SA-20-CV-00072-FB |
| vs. | § § § | |
| GEORGE E LUCAS JR, | § § § | |
| *Defendant.* | § § | |

**ORDER**

Before the Court in the above-styled cause of action is Plaintiff's Motion to Strike Portions of the Testimony of John R. Anderson, M.D. [#30], by which Plaintiff asks the Court to limit the testimony of John R. Anderson, M.D., Defendant's retained medical expert. This case was referred to the undersigned for all pretrial proceedings on February 27, 2020 [#5]. Therefore, the undersigned has authority to issue this order pursuant to 28 U.S.C. § 636(b)(1)(A).

The Court held a telephonic hearing on the motion on October 22, 2020, at which Plaintiff and Defendants appeared through counsel and at which Dr. Anderson provided live testimony. At the close of the hearing, the Court issued certain oral rulings, which are now memorialized with this written Order.

**I. Background**

This lawsuit arises out of a motor-vehicle accident occurring on November 26, 2018 on Interstate 10 in Seguin, Texas. Plaintiff Karen Gallagher a/k/a Karen Schmitz filed this lawsuit against Defendant George E. Lucas, Jr., alleging various theories of negligence related to the accident. According to the Amended Complaint before the Court, Plaintiff was a passenger in a vehicle struck by Defendant's truck and suffered severe and permanent bodily injuries.

Defendant designated Dr. Anderson, a board-certified orthopedic surgeon, as a medical expert to opine on Plaintiff's injuries, the causation and source of her injuries, the necessity of treatment, and the reasonableness of cost. (Expert Designation [#19] at 3.) Medical records indicate that Plaintiff has been receiving treatment for injury to her cervical and lumbar spine since the accident and that Dr. Frank Kuwamura has recommended Plaintiff undergo two lumbar spine surgeries (sacroiliac joint fusion and a 360-degree fusion from L3 to the sacrum) at a projected cost of $469,451 and $163,763, respectively. After reviewing the incident report associated with the accident, photos of the damaged vehicle, the pleadings and discovery exchanged in this case, the parties' deposition transcripts, and Plaintiff's medical records and bills, Dr. Anderson concluded that the evidence fails to support Plaintiff's claim of substantial injury from the accident at issue and that Plaintiff has preexisting degenerative disease of the spine. (Anderson Expert Report [#19-1] at 15–16.)

Plaintiff now moves to limit Dr. Anderson's testimony under *Daubert* and Rule 702 of the Federal Rules of Evidence, arguing that Dr. Anderson should not be permitted to testify on the biomechanics of the accident or the projected cost of spinal surgery. Plaintiff does not seek to limit Dr. Anderson's testimony interpreting the extent of Plaintiff's injuries and the necessity of medical treatment, including the recommended spinal surgeries.

## II. Legal Standard for Admissibility of Expert Opinions

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594–96). Because the *Daubert* test focuses on the underlying theory upon which the opinion is based, the proponent of expert testimony need not prove the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

*Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability, however, is "flexible," and these factors

"neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142. "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. Analysis

Plaintiff does not challenge the general qualifications or Dr. Anderson to testify as a medical expert in this case. Nor could she credibly do so. Dr. Anderson has over 40 years of experience as a practicing orthopedic surgeon. Nor does Plaintiff challenge the reliability of Dr. Anderson's opinions on the extent of her injuries and the necessity of medical treatment. Rather, Plaintiff argues that Defendants have not established that Dr. Anderson is qualified to testify or has provided reliable opinions regarding (1) the biomechanics of the collision and (2) the reasonableness of the expenses of Dr. Kuwamura's proposed surgery. For the reasons that follow, the Court will grant Plaintiff's motion in part and limit Dr. Anderson from testifying at trial regarding the expenses of Dr. Kuwamura's proposed surgery.

### A.     Biomechanics and Causation

Plaintiff's objection to Dr. Anderson providing opinions regarding the biomechanics of the collision is based solely on two references in Dr. Anderson's expert report.  First, Plaintiff takes issue with Dr. Anderson's statement in Paragraph 14 of the report that "It is difficult to explain, however, how the lumbar spine is affected, since it is totally supported by the seat and undergoes no significant change in direction which is known to cause injury."  Second, Plaintiff objects to Dr. Anderson's statements in Paragraph 15 of the report that "Sacroiliac joint fusion is an unusual procedure" and that Dr. Kuwamara "fails to explain in any way how the sacroiliac joint injury occurred in the plaintiff's motor vehicle accident.  Sacroiliac injuries are only seen in very, very major trauma with multiple fractures."  (Anderson Expert Report [#19-1] at 14–15.)

Dr. Anderson is not a biomechanical engineer.  Nor does his expert report contain opinions on the biomechanical forces involved in the accident.  His opinion is simply that, based on his training and experience as an orthopedic surgeon and his familiarity with the scientific literature, rear-end collisions, like the rear-end collision in this case, are unlikely to cause the lumbar injuries for which Plaintiff seeks treatment and surgery.  Dr. Anderson testified at the Court's hearing that he does not intend to testify that there is no possible way the biomedical forces involved in the accident could have caused Plaintiff's injuries.  Rather, he intends to testify that Plaintiff's injuries are rarely caused by this type of accident.  Dr. Anderson is qualified to provide this testimony at trial.  Plaintiff's concerns with respect to this testimony are more appropriately handled through cross examination.  The Court will therefore deny Plaintiff's motion with respect to Dr. Anderson's causation testimony.  This ruling, however, is without

prejudice to Plaintiff's reurging her objections at trial or in a motion in limine seeking to limit Dr. Anderson's testimony on this matter.

**B.     The Cost of Dr. Kuwamura's Proposed Surgery**

The Court will, however, limit Dr. Anderson from testifying about Dr. Kuwamura's projected costs of the lumbar spinal surgeries. Dr. Anderson's expert report opines that Dr. Kuwamura's projected charges of $469,451 and $163,763 for Plaintiff's recommended spinal surgeries "are highly questionable" and "monumentally excessive." (Anderson Expert Report [#19-1] at 13–15.) Dr. Anderson testified at the Court's hearing that he has not practiced orthopedics in the San Antonio area since the late 1990s, has never performed the type of surgery that Dr. Kuwamura recommends, and has not himself performed any surgery in the last 16 years. Dr. Anderson further testified that his opinion about the reasonableness of the cost of Dr. Kuwamura's proposed surgery is grounded in information ascertained from calling other physicians in his professional network and asking them what they would charge for these kinds of surgeries. Defendant has not met his burden to establish that Dr. Anderson is qualified to testify, based on his own skill, training, and experience, as to the reasonableness of the predicted costs of Plaintiff's surgeries. Rather, the testimony established that Dr. Anderson intends to merely parrot the opinions of other doctors who have not been designated as experts in this case. The Court will therefore allow Dr. Anderson to testify about the reasonableness and necessity of the surgical procedures themselves as treatment for Plaintiff's injuries but not on the reasonableness of the costs associated with them.

In accordance with the foregoing and for the reasons stated on the record during the hearing:

**IT IS THEREFORE ORDERED** that is Plaintiff's Motion to Strike Portions of the Testimony of John R. Anderson, M.D. [#30] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Dr. Anderson is prohibited from testifying at trial on the reasonableness of the predicted costs of the spinal surgeries recommended by Dr. Kuwamura.

**IT IS FINALLY ORDERED** that, in all other respects, the Motion [#30] is **DENIED**.

SIGNED this 30th day of October, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE